## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

ANTWAND NORWOOD,      :

    Petitioner,       :

vs.           : CIVIL ACTION NO. 09-0204-CG-C

UNITED STATES OF    : CRIMINAL ACTION NO. 06-0176-CG
AMERICA,

              :

    Respondent.

## <u>REPORT AND RECOMMENDATION</u>

Petitioner, Antwand Norwood, a federal prison inmate proceeding *pro se*, has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 674), as amended (Doc. 712). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). An evidentiary hearing was held on December 17, 2009. Following consideration of all relevant pleadings in this case, as well as the testimony of petitioner and Cindy Powell, Esquire, at the evidentiary hearing, it is recommended that Norwood's § 2255 motion be denied and a certificate of appealability not be granted.

## FINDINGS OF FACT

1.      On August 3, 2006, a criminal complaint was issued charging Norwood with conspiracy to possess with intent to distribute cocaine and crack cocaine in violation of 21 U.S.C. § 846,  possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), and with being a felon in possession of ammunition and/or a firearm in violation of 18 U.S.C. § 922(g)(1). (*See* Doc. 1) By superseding indictment, filed in open court on August 31, 2006, Norwood was charged with one count of conspiracy to possess with intent to distribute marijuana, cocaine and more than 50 grams of crack cocaine in violation of 21 U.S.C. § 846, one count of possession with intent to distribute cocaine (on August 2, 2006) in violation of 21 U.S.C. § 841(a)(1), and one count of possessing ammunition, after having been previously convicted of three felonies, in violation of 18 U.S.C. § 922(g)(1). (Doc. 199)[1]

2.      One day after the United States filed notice of intent to seek enhancement of Norwood's sentence if convicted of Count One of the Superseding Indictment (Doc. 294 ("The Defendant therefore faces a minimum mandatory term of twenty (20) years to life imprisonment without release, a

---

[1]      The superseding indictment added a forfeiture count with respect to all named defendants. (*See id*., Count Thirty-Five)

fine of up to $8,000,000 and a term of supervised release of at least ten (10) years as to Count One of the Indictment.")), that is, on October 11, 2006, the parties filed a plea agreement and factual resume with the Court (Doc. 298). The plea agreement, reads, in relevant part, as follows:

## PLEA AGREEMENT

The defendant, **ANTWAND NORWOOD**, represented by his counsel, and the United States of America have reached a Plea Agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF THE DEFENDANT

1.      The defendant understands his/her rights as follows:

      a.      To be represented by an attorney;

      b.      To plead not guilty;

      c.      To have a trial by an impartial jury;

      d.      To confront and cross-examine witnesses and to call witnesses and produce other evidence in his/her defense;

      e.      To not be compelled to incriminate himself/herself.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

2.      The defendant waives rights b through e, listed above, and pleads guilty to Count 1 of the Superseding

Indictment, charging a violation of 21 United States Code, Section 846, conspiracy to possess with the intent to distribute controlled substances.

.        .        .

4.      The defendant expects the Court to rely upon his/her statements here and his/her response to any questions that he/she may be asked during the guilty plea hearing.

5.      The defendant is not under the influence of alcohol, drugs, or narcotics. He/She is certain that he/she is in full possession of his/her senses and mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6.      The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He/She has discussed the facts of the case with his/her attorney, and his/her attorney has explained to the defendant the essential legal elements of the criminal charge(s) which has/have been brought against him/her. The defendant's attorney has also explained to the defendant his/her understanding of the United States' evidence.

7.      The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge(s) beyond a reasonable doubt. The defendant and his/her counsel have discussed possible defenses to the charge(s). The defendant believes that his/her attorney has represented him/her faithfully, skillfully, and diligently, and he/she is completely satisfied with the legal advice of his/her attorney.

8.      A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct.

4

9.      This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations apart from those set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court may impose. The defendant avers that he/she is pleading guilty because he/she knows that he/she is guilty.

## PENALTY

10.      The maximum penalty the Court could impose as to Count One of the Superseding Indictment is:

        a.      20 years to life imprisonment;

        b.      A fine not to exceed $8,000,000;

        c.      A term of supervised release of 10 years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he/she could be imprisoned for the entire term of supervised release; and

        d.      A mandatory special assessment of $100.00.

## SENTENCING

11.      The Court will impose the sentence in this case. The United States Sentencing Guidelines apply in an advisory manner to this case. The defendant has reviewed the application of the Guidelines with his/her attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he/she will not be allowed to withdraw his/her guilty plea if the applicable

guideline range is higher than expected, if the Court departs from the applicable advisory guideline range, or if the Court imposes a sentence notwithstanding the Guidelines.

12.     The United States may provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

13.     The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

14.     Both the defendant and the United States are free to allocute fully at the time of sentencing.

.     .     .

## UNITED STATES' OBLIGATIONS

16.     The United States will not bring any additional charges against the defendant related to the facts underlying the Superseding Indictment and will move to dismiss Counts 25 and 28 at sentencing. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

17.     The United States will recommend to the Court that the defendant be sentenced at the low end of the applicable advisory sentencing guideline range as determined by the Court.

## APPLICATION OF U.S.S.G. § 5K1.1 AND/OR FED.R.CRIM.P. 35

18.    If the defendant agrees to cooperate with the United States, he/she agrees to the following terms and conditions:

.      .      .

g.    If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable. The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance for this purpose. The defendant also understands that should he/she provide untruthful information to the United States at any time, or should he/she fail to disclose material facts to the United States at any time, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend to the district court judge who sentences the defendant that the defendant receive a sentence at the low end of the applicable advisory guideline range.

7

.     .     .

## LIMITED WAIVER OF RIGHT TO APPEAL SENTENCE

19.     The defendant acknowledges that he/she is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. In exchange for the recommendations made by the United States in this Plea Agreement, the defendant knowingly and voluntarily waives the right to appeal any sentence imposed in this case.

20.     With the limited exceptions noted below, the defendant also waives his/her right to challenge any sentence so imposed, or the manner in which it was determined, in any collateral attack, including but not limited to, a motion brought under 28 U.S.C. § 2255.

21.     The defendant reserves the right to contest in an appeal or post-conviction proceeding any of the following:

a.     Any punishment imposed in excess of the statutory maximum;

b.     Any punishment that constitutes an upward departure from the guideline range; or

c.     A claim of ineffective assistance of counsel.

22.     In addition, the defendant reserves the right to petition the Court for resentencing pursuant to 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the defendant's sentence.

(*Id.* at 1, 2-4, 4-5, 7-8 & 9-10 (emphasis in original)) Appearing before

Norwood's signature line on page 12 of the agreement is this paragraph: "I

8

have consulted with my counsel and fully understand all my rights with respect

to the offenses(s) charged in the Superseding Indictment pending against me.

I have read this Plea Agreement and carefully reviewed every part of it with

my attorney. I understand this agreement, and I voluntarily agree to it. I hereby

stipulate that the Factual Resume,[2] incorporated herein, is true and accurate in

---

[2]        The Factual Resume, which Norwood also signed, reads as follows:

        The defendant, **ANTWAND NORWOOD**, admits the allegations of
Count 1 of the Superseding Indictment.

### ELEMENTS OF THE OFFENSE

        **NORWOOD**  understands that in order to prove a violation of Title 21,
United States Code, Section 846, as charged in Count 1 of the Superseding
Indictment, the United States must prove:

> 1.        That two or more persons in some way or manner, came to a
>           mutual understanding to unlawfully distribute controlled
>           substances.
>
> 2.        That the defendant knowingly and willfully became a member of
>           such conspiracy.

### OFFENSE CONDUCT

        Defendant, **ANTWAND NORWOOD**, admits in open court and under
oath that the following statement is true and correct and constitutes evidence in
this case.

        During the dates charged in the conspiracy count of the indictment, the
defendant **ANTWAND NORWOOD** did knowingly and willfully conspire and
agree with others named in the indictment to distribute and possess with the intent
to distribute crack cocaine in the 1400 block of Saint Phillips Street, Selma,
Alabama, and elsewhere. Agents from Alcohol, Tobacco, Firearms and
Explosives, in conjunction with officers from [the] Selma, Alabama police

9

every respect, and that had the matter proceeded to trial, the United States

could have proven the same beyond a reasonable doubt." (*Id.*)

3.     Two days later, on October 13, 2006, Norwood entered a

counseled guilty plea to Count One of the Superseding Indictment. (Doc. 685,

Guilty Plea Transcript; *see also* Doc. 300 (order on guilty plea))

> THE COURT:     Mr. Norwood, let me get you to step
> forward, if you would, please, sir. Raise your right hand and
> take an oath.
>
> (The defendant was sworn.)

---

department began looking into illegal sales of narcotics in the 1400 block of St.
Phillips Street, Selma, Alabama in the early Spring of 2005. By use of pole
cameras located at each end of the block, informants, undercover purchases, and
"pick-offs" of drug purchasers, agents determined that **NORWOOD** and the
others named in the indictment worked together to sell various street level
amounts of crack cocaine, cocaine, and marijuana to individuals who either drove
by or walked up to meet with the various drug dealers. The group purchased their
drugs from outside sources. This investigation lasted up through August 2, 2006.
The results of search warrants executed on August 2, 2006 at the homes of the
defendant and others in the conspiracy corroborated the evidence received earlier.
The defendant agreed with others named in the indictment to distribute and
possess with intent to distribute in excess of 50 grams of cocaine base, also
known as crack cocaine within the Selma area; however, the United States and the
defendant do not have an agreement as to the exact amount of crack cocaine for
which the defendant shall be held accountable for purposes of relevant conduct,
and both parties are free to present their respective positions at sentencing for the
Court's determination of this issue by the preponderance of evidence.

(Doc. 298, FACTUAL RESUME, at 1-2)

THE DEFENDANT :        Yes.

THE COURT:        All right. Would you state your full name for the record, please, sir?

THE DEFENDANT:        Antwand Norwood.

THE COURT:        All right. Mr. Norwood, I need to tell you that you're now under oath and if you answer any of my questions falsely, your answers may later be used against you in another prosecution for perjury or for making a false statement. Do you understand that?

THE DEFENDANT:        Yes, sir.

THE COURT:        All right. What is your age? How old are you?

THE DEFENDANT:        30 years old, sir.

THE COURT:        And how much education have you completed?

THE DEFENDANT:        I graduated from high school and I have technical training from the military.

THE COURT:        All right. Mr. Maddox, to the best of your knowledge, is Mr. Norwood fully competent to enter a valid plea today?

MR. MADDOX:        Yes, sir, he is.

THE COURT:        Mr. Norwood, have you ever been treated for any mental illness or addiction to narcotic drugs of any kind?

THE DEFENDANT:        No, sir.

THE COURT:    Are you currently under the influence of any drug or medication or alcoholic beverage of any kind?

THE DEFENDANT:    No, sir.

THE COURT:    Have you received a copy of the indictment in this case, had a full opportunity to read it and review it with your attorney, and do you understand the charge[s] contained in the indictment?

THE DEFENDANT:    Yes, sir.

THE COURT:    Is it necessary that I read the indictment to you?

THE DEFENDANT:    No, sir.

THE COURT:    Are you fully satisfied with the representation that you've received from your attorney in this case and have you fully discussed with Mr. Maddox all of the facts surrounding the charge in the case?

THE DEFENDANT:    Yes, sir.

THE COURT:    Now, I've been furnished  with a written plea agreement. [] This plea agreement appears to have your signature at the end of the plea agreement and also at the end of the factual resume. Did you in fact sign the document?

THE DEFENDANT:    Yes, sir.

THE COURT:    By signing this document, Mr. Norwood, you're acknowledging that you have received a copy of it, you've read it, you've discussed it with your attorney, you understand what's contained in the document, and that you agree with it; is that true?

THE DEFENDANT :        Yes, sir.

THE COURT:        Have there been any promises made to you by anyone or has anyone attempted in any way to force you to plead guilty or to pressure you or threaten you in any way?

THE DEFENDANT:        No, sir .

THE COURT:        Now, the penalties that could be imposed if convicted of count one of the indictment are outlined on page three of the plea agreement. And it states that if convicted of count one you could receive a term of imprisonment of 20 years to life, a fine not to exceed $8 million, a supervised release term up to 10 years, and a mandatory special assessment of $100. Do you understand that?

THE DEFENDANT:        Yes, sir.

THE COURT:        Are you presently on probation, parole, or supervised release in any other case that may be subject to revocation?

THE DEFENDANT:        No, sir.

THE COURT:        Any restitution o[r] forfeiture to be had in this case, Mr. Cherry?

MR. CHERRY:        No, sir. Not in his particular case.

THE COURT:        Mr. Norwood, if you're convicted of the charge in this case you may lose valuable rights, including the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm. Do you understand that?

THE DEFENDANT:        Yes, sir.

THE COURT:        And because it's a drug offense, you could lose certain federal benefits. Do you understand that?

THE DEFENDANT:        Yes, sir.

MR. CHERRY:        Your Honor, excuse me. I did make a mistake. There is a forfeiture provision in the agreement. And if we cannot agree on the amount by the time of the sentencing, we would ask the Court to set an amount.

.        .        .

THE COURT:        Then, Mr. Norwood, do you understand if you plead guilty and you are found guilty, the Court might require you to forfeit property to the United States?

THE DEFENDANT:        Yes, sir.

THE COURT:        Now, the United States Sentencing Commission has issued guidelines for judges to consider in determining a sentence in a criminal case. Have you and your attorney talked about how those guidelines might affect your case?

THE DEFENDANT:        Yes, sir.

THE COURT:        The way in which the sentencing guidelines apply to your case might be affected by what you say to the Court and to the probation officer. The Court will not be able to determine an appropriate sentence for your case until after a presentence report has been completed and you and the United States  have had an  opportunity to challenge the facts reported by the probation officer. Do you understand?

THE DEFENDANT:        Yes, sir.

THE COURT:        The sentence imposed might be different from any estimate your attorney or anyone else might

14

have given you. Do you understand that?

THE DEFENDANT:        Yes, sir.

THE COURT:       After it has been determined what guideline applies to a case, the judge has the authority to impose a sentence that is more severe or less severe than the sentence called for in the guidelines. Do you understand that?

THE DEFENDANT:        Yes, sir.

THE COURT:       Now, under some circumstances, you and the United States may each have the right to appeal any sentence the judge imposes. For instance, you can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary or if there's some other fundamental defect in the proceedings not waived by your guilty plea. You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law. With few exceptions, any notice of appeal must be filed within ten days of judgment being entered in your case. If you're unable to pay the cost of an appeal, you may apply for leave to appeal in forma pauperis. Do you understand that?

THE DEFENDANT:        Yes, sir.

THE COURT:       You also have a right to waive your right to appeal. And I see by your plea agreement that you are waiving your right to appeal any sentence imposed, with the following exceptions. And that would be any punishment in excess of the statutory maximum, any punishment constituting an upward departure of the guideline range, and any claim of ineffective assistance of counsel. Do you understand that?

THE DEFENDANT:        Yes, sir.

THE COURT:       Parole has been abolished. If you're sentenced to prison, you will not be released on parole. Do you

15

understand that?

THE DEFENDANT:          Yes, sir.

THE COURT:          If the sentence is more severe than you expected or if I do not accept the sentencing recommendation in your plea agreement, you will still be bound by your plea. Even if you do not like the sentence imposed by the Court, you will not be able to withdraw your plea. The time to make that decision is now. Do you understand that?

THE DEFENDANT:          Yes, sir.

THE COURT:          You have the right to plead not guilty to any offense charged against you and to persist in that plea. You would then have the right to a trial by jury. During that trial you would have the right to the assistance of counsel for your defense and to the appointment of counsel if you could not afford to hire one, the right to see and hear all of the witnesses and to have your attorney cross-examined them, the right to testify yourself or to decline to testify and remain silent, and the right to have the Court issue subpoenas for any witnesses you wish to call in your defense. At the trial you would be presumed to be innocent and the United States would have the burden of proving that you are guilty beyond a reasonable doubt. Before you can be convicted, all 12 jurors must be convinced that the United States has met that burden. If you are found guilty after trial, you then have the right to appeal that conviction to a higher court. And if you could not afford to pay the cost of an appeal, the government would pay those costs for you. Do you understand that?

THE DEFENDANT:          Yes, sir.

THE COURT:          If you plead guilty, however, and if the Court accepts your plea, there will be no trial, you will be waiving or giving up your right to a trial and all the other rights

16

that I just described. Do you understand that?

THE DEFENDANT:          Yes, sir.

THE COURT:          Now, contained in your plea agreement is a factual resume. You've already told me that you've read it, discussed it with your attorney, and that you understand it and agree with it. But it also contains the elements of the offense of the count of the indictment to which you are pleading guilty. And count one of the indictment charges a violation of Title 21, United States Code, Section 846. And the elements of that offense are that two or more persons in some way or manner came to a mutual understanding to unlawfully distribute controlled substances and that you knowingly and willfully became a member of that conspiracy. And in this case the drug was crack cocaine; is that correct?

MR. CHERRY:          Yes, sir.

THE COURT:          All right. Do you understand that those are the elements of the offense to which you are pleading guilty?

THE DEFENDANT:          Yes, sir.

THE COURT:          And do you fully understand that if there's a trial in this case, the United States would be required to present sufficient evidence to prove each of these elements beyond a reasonable doubt?

THE DEFENDANT:          Yes, sir.

THE COURT:          Now, included in the factual resume is a statement of offense conduct. Did you in fact commit the acts and do the things that you have admitted to in this statement of offense conduct?

THE DEFENDANT:          Yes, sir.

17

THE COURT:       All right. And I see that you are reserving the right to argue the weight of the drugs at the time of sentencing; is that right?

MR. MADDOX:     Yes, sir.

THE COURT:       All right. . . . Then I find that the facts and acts to which you have admitted support a violation of the charge contained in count one of the indictment. How do you now plead to the charge in count one of the indictment, guilty or not guilty?

THE DEFENDANT:         Guilty.

THE COURT:       And are you pleading guilty of your own free will because you are guilty?

THE DEFENDANT:         Yes, sir.

THE COURT:       Mr. Maddox, are you aware of any reasons that the Court should not accept Mr. Norwood's guilty plea at this time?

MR. MADDOX:     No, sir, I'm not.

THE COURT:       All right. Then it is the finding of this Court in the case of United States versus Antwand Norwood that you are fully competent and capable of entering an informed plea, that you are aware of the nature of the charge and the consequences of your plea, and that your plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. Your plea is therefore accepted and you are now adjudged guilty of that offense.

(*Id.* at 2-5 & 6-11)

4.       The Presentence Investigation Report was initially prepared by

18

the Probation Office on December 22, 2006 and filed as a sealed document on

March 30, 2007. (*See* Doc. 483) The defendant interposed the following

objections to the Presentence Report:

> 1.      Defendant objects to the alias of "Poo Pie" alleged in paragraphs 1, 7, and any subsequent paragraphs. This is an alias of Defendant's brother and the defendant does not respond to that alias.

> 2.      Defendant objects to the facts alleged in paragraph 5 to the extent that he doubts that an actual profit of $5000.00 to $8000.00 occurred in the area described.

> 3.      Defendant objects to paragraphs 7, 15, 26, 27, and 56 to the extent that they allege that Defendant possessed firearms. Specifically, as to paragraph 56, it should be noted that the firearm described therein belonged to and was possessed by Herman Craig, who has already entered a plea to possession of same and has been sentenced. Defendant further objects to paragraph 69 upon the grounds that he did not possess a firearm in his participation and did not knowingly associate with those possessing firearms at the time of his participation.

> 4.      Defendant objects to paragraphs 62 (calculation of quantity of cocaine base), 68, 73, 74, 77, 130, and all others relying on such calculation. Defendant's participation in the "conspiracy" was limited to activities with a limited number of individuals and began more than five years after the beginning of the conspiracy. The indictment alleges that the conspiracy began in 1999. Defendant began serving a prison sentence (time both in the Dallas County Jail and state prisons) on July 12, 2000. He was incarcerated until August 12, 2003. Upon release from prison, he resided in Montgomery, Alabama with his mother, returning to Selma in March, 2004. His limited participation in the overall conspiracy began after that time. Defendant believes that he should be held accountable for 250

grams of cocaine base, which he believes is an accurate representation of his participation, based upon discovery, with the co-conspirators (some of whom he did no business with). This would place his offense level at 34. Defendant recognizes, however, that U.S.S.G. 4B1.1 might require a base level of 37. Defendant thus believes that with that base offense level, no increase for firearms, and adjustments for acceptance of responsibility, his Total Offense Level should be 34.

5.      Defendant objects to paragraph 107 in that it seems to indicate that the defendant actually moved from Selma to Montgomery in August, 2003. Although his "official residence" might have been listed as Selma up until August 2003, [] he was incarcerated until that time and he lived in Montgomery from his release until approximately March, 2004.

6.      Defendant objects to paragraphs 89, 90, 91 and paragraphs and computations relying on those calculations because there is no listed date for the beginning of Defendant's participation in the conspiracy. Defendant[] does not recall participating in transactions involving any of his co-indictees until after August, 2005. The pole cameras referenced in the Factual Resume signed by Defendant failed to show Defendant participating in the street activities on which most co-indictees are shown. Defendant contends that he should have 9 criminal history points.

(Doc. 481, at 1-2)[3]

5.      Sentencing was originally scheduled for February 6, 2007 in this case (*see* Doc. 300) but due to numerous requests for continuation of sentencing, from both the government and the defendant (Docs. 375, 488, 491,

---

[3]      The United States interposed "no objections to the calculated Offense Level, Criminal History, and resulting advisory Guideline Range." (Doc. 446)

523, 549; *see also* Docs. 377, 492, 524 & 550 (orders granting continuances)), and a motion to determine conflict of interest and motion to withdraw filed by Norwood's retained counsel, Bruce Maddox, Esquire (Docs. 584-585), petitioner's sentencing hearing did not take place until March 25, 2008 (*compare* Doc. 601 (order rescheduling sentencing hearing to March 25, 2008) *with* Doc. 686 (transcript of March 25, 2008 sentencing hearing)). Prior to the sentencing hearing, Norwood's retained counsel was allowed to withdraw (Doc. 588) and Cindy W. Powell, Esquire was appointed to represent the defendant at sentencing (Doc. 589 (order of appointment dated February 7, 2008)).

6.    On February 1, 2008, the government filed a motion for downward departure due to Norwood's substantial assistance. (Doc. 581)

> 3.    The Defendant's present adjusted offense level on Count One[] is 35[] (per the U.S.S.G. guideline adjustments of November 1, 2007) within the advisory sentencing guidelines, subject to the findings of the Court, with a criminal history category of VI, for a guideline range of 292 to 365 months. The statutory minimum sentence is 240 months pursuant to 21 U.S.C. § 841(b)(1)(A) enhanced. The United States respectfully moves the Court to consider a downward departure of five (5) levels on Count One, to an adjusted offense level of 30, and a sentencing guideline range of 168 to 210 months, with a specific recommendation of 176 months to serve due to the Defendant's substantial assistance and for such other factors as the Court may consider.

(*Id.* at 1-2)

7.     During the sentencing hearing on March 25, 2008, the following

occurred:

THE COURT:        All right. Ms. Powell, have you and
Mr. Norwood been over the presentence investigation report?

MS. POWELL:        Yes, ma'am, we have.

THE COURT:        All right. A number of objections
were filed by his former counsel, and I need to know how many,
if any, of those are still outstanding.

MS. POWELL:        Judge, in light of the 5K motion
filed by the government asking that he receive a downward
departure, we're going to withdraw those objections at this time.

THE COURT:        All right. Based upon that, I'm going
to make a finding as to the guideline levels under the amended
crack guideline levels. The presentence report reflects the old
calculations. But it's my finding that the total offense level in
this case is 35, with a criminal history category of VI.

MS. POWELL:        Yes, ma'am.

THE COURT:        The base offense level . . . is 36,
with the two-level enhancement for the firearm, adjusted offense
level 38, three off for acceptance of responsibility is 35, with a
criminal history of VI.

MS. POWELL:        Yes, ma'am.

THE COURT:        All right. I'll hear from you. Well,
let me hear from Mr. Cherry first on his motion.

MR. CHERRY:        Yes, Your Honor. Please the Court,

22

I think this motion pretty well lays out our position. I do want to say that at the sentencing of Guerrin Saintil, who was the supplier for these folks, we did proffer Mr. Norwood, he did give us a full statement of his and some others' involvements. Through the lack of communication, he was not allowed to testify at the sentencing of Saintil, which was not his fault. But he was ready, willing, and able to testify.

THE COURT:         All right. Do you have anything you want to add to that, Ms. Powell?

MS. POWELL:         Your Honor, in light of Mr. Norwood's cooperation, and in that the government is asking you to downwardly depart based upon the extent of Mr. Norwood's cooperation – and as Mr. Cherry said, at Mr. Saintil's sentencing Mr. Norwood was supposed to be brought here to testify at that sentencing, and by some error he was not brought from the jail where he was incarcerated. I believe it was at Perry County at that time. That's where he's presently housed. But he stood ready to testify against Mr. Saintil.

What we would ask Your Honor is, based upon his full cooperation and full disclosure of his involvement in the St. Phillips Boys conspiracy, that you would give him 50 percent off the low end of the guidelines, which would be . . . I think 146 months.

THE COURT:         All right. Now, I understand the government's recommending 176 months; is that correct?

MR. CHERRY:         Yes, Your Honor.

THE COURT:         Otherwise the guidelines are 292 to 365 months.

MR. CHERRY:         That's correct.

THE COURT:         The motion doesn't specifically say

23

it, but I assume that it is pursuant to 3553(e).

      MR. CHERRY:     It is, Your Honor. Yes, ma'am.

      THE COURT:     All right. Mr. Norwood, do you have anything that you would like to say before I impose sentence in your case?

      THE DEFENDANT:     First of all, I would like to apologize to the Court and everyone involved for my participation in the, you know, conspiracy and that I just, you know, regret what I have done. But since I've been incarcerated these 19 months, I have, you know what I'm saying, had time to sit back and reflect on, you know, my actions and I realize that, you know, it was a big mistake. . . . I don't know if you received my letter that I wrote you. . . . I stated [i]n the letter, I do attend church and I had just attended church and . . . in prayer at altar call . . . I was trying to make a change in my life. And later on that week . . . I was picked up. So I look at this as God's hand . . . giving me an opportunity to change my life. Because there's a lot of people, you know, that aren't presented with an opportunity, where, you know, drugs normally lead to jail or death. So it hasn't led me to death. It's led me to jail. So I guess this is God's way of giving me an opportunity to change my life and I just would ask that, you know, you would have a little mercy on me and allow me to have the 12 years. So I have two eight-year-old twin boys that I'm going to be away from them for a little while, and I would like to get back to them as soon as possible. And I also would like to be able to have drug treatment while I'm also being incarcerated. And I just throw myself on the mercy of the Court at this time.

      THE COURT:     All right. Well, I've considered the government's motion and I think it's well taken and I intend to grant the government's motion.

      I have also considered the sentencing guidelines and I find that, with the motion for downward departure, the

guidelines provide for an appropriate sentence in this case and the sentence I give is reasonable, considering the statutory purposes of sentencing, which I've also considered.

I'm now going to state the sentence I intend to impose and I'll allow counsel to make legal objections to it before imposition of the sentence.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Antwand Norwood, is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 176 months as to count one. The Court recommends that the defendant be imprisoned at an institution where a residential comprehensive substance abuse treatment program is available.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of 10 years on count one.

Within 72 hours of release from custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which he's released. While on supervised release, the defendant shall not commit any federal, state, or local crimes, he shall be prohibited from possessing a firearm or other dangerous device and shall not possess a controlled substance. In addition, the defendant shall comply with the standard conditions of supervised release as recommended by the United States Sentencing Commission and on record with this Court.

The Court orders that the defendant also comply with the following special condition of supervised release: He shall participate in a program of testing and treatment for drug and/or alcohol abuse as directed by the probation office.

The Court finds that the defendant does not have the ability to pay a fine, and therefore a fine is not imposed.

25

As I indicated, I find that the range, the guideline range, with the motion for downward departure is appropriate to the facts and circumstances of this case and the sentence imposed is reasonable, given the statutory purposes of sentencing.

The sentence addresses the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation.

It is ordered that the defendant pay a special assessment in the amount of $100 on count one, which shall be due immediately.

Now, having stated the sentence I intend to impose, are there any legal objections to it?

MS. POWELL:       No, Your Honor.

MR. CHERRY:       None Your Honor.

THE COURT:        I hereby impose the sentence as previously stated.

Now, Mr. Norwood, you can appeal your conviction if you believe that your guilty plea was unlawful or involuntary or if there is some other fundamental defect in the proceeding that was not waived by your guilty plea.

You also have a statutory right to appeal the sentence itself in certain circumstances, particularly if you think the sentence is contrary to the law. However, you entered into a plea agreement which waives certain of your rights to appeal the sentence itself. Such waivers are generally enforceable. But if you believe the waiver to be unenforceable, you can test that theory in the appellate Court.

If you do decide to appeal, you must do so within 10 days of entry of judgment in this case and Ms. Powell could file that

26

notice for you.

Now, counts 25 and 28 are to be dismissed; is that correct?

MR. CHERRY:      Yes, Your Honor.

THE COURT:       What about the forfeiture count?

MR. CHERRY:      The forfeiture would not apply to this defendant. []

THE COURT:       That count is dismissed as well. And we're adjourned.

(Doc. 686, at 2-8; *see also* Doc. 614 (judgment in a criminal case entered April 8, 2008))

8.      Norwood did not appeal his conviction or sentence. (*See* Docket Sheet)

9.      On April 4, 2009, Norwood filed the present collateral attack on his conviction and sentence pursuant to 28 U.S.C. § 2255. (*See* Doc. 674, at 6 (date petitioner signed the petition)) Therein, petitioner contends that he was denied the effective assistance of counsel. (*See id*.) Norwood alleges the following instances of ineffective assistance of counsel: (1) his attorney failed to file an appeal despite his repeated requests that an appeal be filed; (2) his attorney failed to object to the Assistant United States Attorney recommending a sentence above the low end of the guidelines when the plea agreement stated

27

the government would recommend a low-end sentence; (3) his attorney failed to object to the career-criminal enhancements based upon his prior felony convictions which did not qualify as predicate offenses thereby causing him to be sentenced using the wrong criminal history category; and (4) his attorney failed to make any objections to the pre-sentence report and, instead, withdrew objections asserted by previous counsel. (Doc. 674, at 4)

10.    The United States filed its response on July 29, 2009, and therein agreed that an evidentiary hearing was necessary with respect to Norwood's first claim of ineffective assistance of counsel. (Doc. 699)

11.    Petitioner, through appointed counsel, filed an amended petition on December 10, 2009. (Doc. 712) Therein, petitioner raises the following additional claims: (1) his guideline range was determined without considering a variance under *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) and an adjustment of the guidelines under *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007); and (2) his attorney provided ineffective assistance in failing to argue for a reduced sentence/variance pursuant to *Booker* and *Kimbrough*.

12.    An evidentiary hearing was held in this matter on December 17, 2009, at which the undersigned heard the testimony of petitioner, Antwand

Norwood, and the attorney who represented him during his sentencing proceeding on August 25, 2008, Cindy Powell, Esquire. Prior to the taking of testimony and in an effort to pare down the issues, counsel for Norwood, with petitioner's consent, withdrew his claims that Powell was ineffective in failing to challenge the drug quantity set forth in the pre-sentence report and for failing to challenge that he was a career offender.[4] Accordingly, this Court is

---

[4]    That Norwood is a career offender is clear from the record and the sentencing guidelines. Section 4A1.1 of the United States Sentencing Guidelines provides that in determining criminal history category three points are to be added to each prior sentence of imprisonment exceeding one year and one month. Moreover, § 4A1.2 provides the following instructions with respect to computing criminal history:

   **(a)    Prior Sentence**

   (1) The term "prior sentence" means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense.

   (2) If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence.

   .    .    .

   (3)    A conviction for which the imposition or execution

of sentence was totally suspended or stayed shall be counted as a prior sentence under §4A1.1(c).

.       .       .

**(b)** **Sentence of Imprisonment Defined**

(1) The term "sentence of imprisonment" means a sentence of incarceration and refers to the maximum sentence imposed.

(2) If part of a sentence of imprisonment is suspended, "sentence of imprisonment" refers only to the portion that was not suspended.

.       .       .

**(c)** **Applicable Time Period**

(1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

(2) Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

(3) Any prior sentence not within the time periods specified above is not counted.

.       .       .

**(k)** **Revocations of Probation, Parole, Mandatory Release, or Supervised Release**

(1) In the case of a prior revocation of probation, parole, supervised release, special parole, or mandatory release, add the original term of imprisonment to any term of imprisonment

30

left to consider Norwood's *Kimbrough* claim and his claim that his attorney

provided ineffective assistance in (1) failing to file an appeal; (2) failing to

object to the Assistant United States Attorney recommending a sentence above

the low end of the guidelines when the plea agreement stated the government

would recommend a low-end sentence; and (3)  failing to argue for a reduced

sentence/variance pursuant to *Booker* and *Kimbrough*.

## CONCLUSIONS OF LAW

1.      28 U.S.C. § 2255 reads, in relevant part, as follows: "A prisoner

in custody under sentence of a court established by Act of Congress claiming

the right to be released upon the ground that the sentence was imposed in

---

imposed upon revocation. The resulting total is used to compute
the criminal history points for §4A1.1(a), (b), or (c), as applicable.

    (2)      (A) Revocation of probation, parole, supervised
release, special parole, or mandatory release may
affect the points for §4A1.1(e) in respect to the
recency of last release from confinement.

*Id.* (emphasis in original). Finally, the sentencing guidelines categorizes a defendant as a career
offender if "(1) the defendant was at least eighteen years old at the time the defendant committed
the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a
crime of violence or a controlled substance offense; and (3) the defendant has at least two prior
felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G.
§4B1.1(a). Even petitioner's retained attorney admitted Norwood has nine (9) criminal history
points (Doc. 481, at ¶ 6) attributable to his three prior felony convictions (*compare id. with* Doc.
483, ¶¶ 85-87). Because at least two of these felony convictions were controlled substance
offenses (Doc. 483, ¶¶ 85-86) Norwood was a career offender, U.S.S.G. §4B1.1(a), thereby
making his criminal history category VI, U.S.S.G. §4B1.1(b).

violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

2.     In   this   instance,   Norwood   contends,   primarily,   that constitutionally ineffective assistance of counsel entitles him to the relief afforded by 28 U.S.C. § 2255.[5] In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The petitioner bears the burden of proof on the 'performance' prong as well as the

---

[5]       Once a criminal defendant enters a guilty plea, he waives all non-jurisdictional challenges to the conviction's constitutionality and only an attack on the voluntary and knowing nature of the plea can be raised.  *See McMann v. Richardson*, 397 U.S. 759, 772, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).  Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by ***competent counsel***, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-2547, 81 L.Ed.2d 437 (1984) (emphasis supplied). Therefore, when a § 2255 motion is filed collaterally challenging convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989).

'prejudice' prong of a *Strickland* claim, and both prongs must be proved to

prevail." *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001), *cert.*

*denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d

208 (2002).[6] The *Strickland v. Washington* standard for evaluating claims of

ineffective assistance of counsel was held applicable to guilty pleas in *Hill v.*

*Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

> To succeed on such a claim, "the defendant must show that
> counsel's performance was deficient.  This requires showing
> that counsel made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the defendant by the
> Sixth Amendment."  *Strickland v. Washington*, 466 U.S. 668,
> 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).[7]  In addition,
> the defendant must establish that "counsel's constitutionally
> ineffective performance affected the outcome of the plea
> process."  *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.  In other words,
> . . . [a petitioner] "must show that there is a reasonable
> probability that, but for counsel's errors, he would . . . have
> pleaded [not] guilty and would . . . have insisted on going to
> trial."  *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

*Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (footnote, brackets

and ellipses added), *cert. denied sub nom. Coulter v. Jones*, 516 U.S. 1122,

---

[6]     It is proper in considering claims made by a federal prisoner under § 2255 to look
for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See*
*Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*, 209
F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432
(2002).

[7]     "When analyzing ineffective-assistance claims, reviewing courts must indulge a
strong presumption that counsel's conduct fell within the wide range of reasonably professional
assistance."  *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted).

116 S.Ct. 934, 133 L.Ed.2d 860 (1996).[8] Of course, in the context of sentencing following entry of a guilty plea the court simply considers whether petitioner has established, in accordance with *Strickland, supra*, that his attorney was deficient and that he was prejudiced by this deficiency in performance. *See, e.g., Myers v. United States,* 2009 WL 1505638, *1 (W.D. Pa. 2009) ("In order for petitioner to succeed on an ineffective assistance of counsel claim, he must prove: (1) that his counsel was deficient; and (2) that he was prejudiced by his counsel's deficiency.").

      3.     When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oates v. Moore*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

      4.     Petitioner's first claim of ineffective assistance of counsel is that counsel was deficient in failing to appeal his sentence. Norwood testified that

---

[8]     "'[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted).

34

immediately following his sentencing proceeding, he spoke to Powell in one of the holding cells in the courthouse and informed her that he was not satisfied with his sentence and wanted to appeal. Powell confirmed that the two spoke, acknowledged that Norwood was hoping he would receive a lower sentence, that is, a 50% reduction in the low-end of the guidelines to 146 months, but stated that petitioner never instructed her to appeal after she told him that the sentence he received of 176 months was a legal sentence within the guidelines and presented no appealable issues. In light of the conflicting testimony and petitioner's failure to come forward with any evidence–letters, telephone records, etc.– which would corroborate that he instructed Powell to file an appeal, the undersigned credits Powell's version of events over that of Norwood and finds that petitioner did not instruct/request his attorney to file an appeal. Accordingly, Powell's representation of Norwood in this regard was not deficient. *See, e.g., Smith v. United States*, 522 F.Supp.2d 233, 238 (D. D.C. 2007) ("[T]he Court finds that petitioner did not ask his counsel to file an appeal, and therefore, counsel's representation of defendant was not ineffective."); *cf. Gomez-Diaz v. United States*, 433 F.3d 788, 791-792 (11th Cir. 2005) ("The [Supreme] Court [in *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)] first reaffirmed the well-settled rule that

an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se. The Court went on to hold that, even if a client has not made a specific request of his attorney to file an appeal, a court must inquire whether the attorney consulted with the client regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the client's wishes. ***If so, the attorney has only acted unreasonably if he has ignored the client's wishes to appeal the case*.**" (internal citations omitted; emphasis supplied)).

5. Norwood's contention that his trial attorney was ineffective for failing to object to the prosecutor's failure to recommend a low-end sentence is baseless. The plea agreement specifically stated that the government would recommend to the Court that Norwood be sentenced at the low end of the applicable advisory guideline range as determined by the Court. In this case, that applicable advisory guideline range was 292 to 365 months and, of course, petitioner was not sentenced within that range because the prosecutor moved for a downward departure which was granted by the Court. Therefore, the obligation to recommend a low-end sentence obviously evaporated given the motion for a downward departure.[9] As it was, the government still

---

[9] In other words, paragraphs 17 and 18 of the plea agreement are separate and distinct paragraphs. Pursuant to paragraph 17, the government agreed to recommend a sentence

recommended a sentence at the low-end of the downward departure range (168 to 210 months) inasmuch as Norwood received a 176-month sentence. Accordingly, petitioner's argument in this regard is baseless.[10]

      6.     Petitioner's final claim of ineffective assistance of counsel is his argument that Powell erred in failing to argue for a reduced sentence/variance pursuant to *United States v. Booker, supra,* and *United States v. Kimbrough,*

---

at the low end of the advisory guideline range, which, in this case, would have been 292 months. However, pursuant to paragraph 18, the government agreed that if petitioner cooperated and it determined such cooperation to be of substantial assistance it would move for downward departure. The only relationship between the two paragraphs is the government's concession in paragraph 18 that if it determined Norwood's cooperation did not amount to substantial assistance it would nonetheless recommend a sentence at the low end of the applicable advisory guideline range, that is, 292 months. Thus, nothing about this agreement can be read as establishing that the government agreed to a 50% reduction in the low-end advisory guideline range to 146 months, as argued by Norwood. *See* fn 10, *infra*.

[10]     It became apparent during the evidentiary hearing that Norwood felt that the government should have recommended a 50% reduction in his low-end guideline range of 292 months thereby rendering a sentence of 146 months. It is clear to the undersigned that the government never agreed to recommend a 50% reduction in the low-end guideline amount of 292 months; instead all the plea agreement provided was that the government would, in the first instance, recommend a low-end sentence based upon the advisory range rendered by the guidelines (i.e., 292 months) and, second, that it would move for downward departure if petitioner provided substantial assistance. Norwood's confusion regarding what the plea agreement required the government to recommend in terms of sentencing stems from the fact that the government's motion for downward departure allowed petitioner's attorney to argue for a 50% reduction in the low-end guideline range. This is exactly what petitioner's attorney did at sentencing, requesting that the court sentence her client to 146 months, as opposed to the 176 months recommended by the government. Powell was not deficient in failing to object to the government's failure to recommend a 146-month sentence because the government never agreed to recommend such sentence.

*supra*.[11] In *Booker*, the Supreme Court held that the sentencing guidelines are advisory, *id.* at 245, 125 S.Ct. at 757, and reaffirmed its holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id*. at 244, 120 S.Ct. at 756. Three years later

---

[11]    Petitioner also makes a substantive *Booker*/*Kimbrough* claim as he contends that his guideline range was determined by the Court without consideration of a variance under *Booker* and an adjustment of the guidelines under *Kimbrough*. In accordance with paragraphs 20-21 of the plea agreement, Norwood waived his "right to challenge any sentence . . . imposed[] or the manner in which it was determined, in any collateral attack, including . . . a motion brought under 28 U.S.C. § 2255[,]" except: "a. Any punishment imposed in excess of the statutory maximum; b. Any punishment that constitutes an upward departure from the guideline range; or c. A claim of ineffective assistance of counsel." (Doc. 298, at ¶¶ 20 & 21) Because there is no argument, nor can there be any, that petitioner's punishment was in excess of the statutory maximum-240 months in this case–or that his punishment constituted an upward departure from the guideline range, and it being clear that the Court discussed the foregoing waiver provisions with petitioner (Doc. 685, at 7-8), the undersigned concludes that petitioner has waived his right to challenge his sentence in accordance with *Booker* and *Kimbrough* via a § 2255 motion, *compare Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir.) ("It is well-settled that sentence-appeal waivers are valid if made knowingly and voluntarily. In the context of a direct appeal, we have held that for a sentence-appeal waiver to be enforceable, '[t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver.'" (internal citations omitted)), *cert. denied*, 546 U.S. 902, 126 S.Ct. 246, 163 L.Ed.2d 226 (2005) *with Mendoza v. United States,* 2009 WL 3317170, *3 n.2 (S.D. Ga. 2009) ("By 'appeal,' this Court here refers to the right to 'appeal or contest, directly or collaterally, [a] sentence.' Moreover, case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings.") (internal citations omitted)), leaving as his only available attack in this regard the ineffective assistance of counsel claim.

in *Kimbrough,* the Supreme Court, following *Booker*, held the cocaine guidelines to be advisory only. 552 U.S. at 91, 128 S.Ct. at 564. "A district judge ***must*** include the Guidelines range in the array of factors warranting consideration. The judge ***may*** determine, however, that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing. In making that determination, the judge may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses." *Id*. (emphasis supplied; internal citation omitted); *see also id.* at 104-105, 128 S.Ct. at 572 ("If the 1986 Act does not require the Commission to adhere to the Act's method for determining LSD weights, it does not require the Commission–or, after *Booker*, sentencing courts–to adhere to the 100-to-1 ratio for crack cocaine quantities other than those that trigger the statutory mandatory minimum sentences."). In other words, in accordance with *Kimbrough* "district courts are entitled to vary from the crack-cocaine guidelines in a mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range." *Spears v. United States*, ___ U.S. ___, ___, 129 S.Ct. 840, 844, 172 L.Ed.2d 596 (2009).

      7.     It is within the context of this legal backdrop that the

undersigned considers petitioner's final claim of ineffective assistance of counsel. First, there is no argument in this case, nor can there be, that this Court treated the sentencing guidelines as mandatory.  Instead, the plea agreement made clear to Norwood the advisory nature of the guidelines (Doc. 298, ¶ 11) and the sentencing transcript clearly establishes that this Court, in line with *Booker* and *Kimbrough*, considered the guidelines range in the array of factors warranting consideration (*see* Doc. 686, at 5-6 & 7 ("I have also considered the sentencing guidelines and I find that, with the motion for downward departure, the guidelines provide for an appropriate sentence in this case and the sentence I give is reasonable, considering the statutory purposes of sentencing, which I've also considered. . . . As I indicated, I find that the range, the guideline range, with the motion for downward departure is appropriate to the facts and circumstances of this case and the sentence imposed is reasonable, given the statutory purposes of sentencing. The sentence addresses the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation.")) While it may well be true that this Court did not consider whether the "within-Guidelines sentence is 'greater than necessary to serve the objectives of sentencing[,]'" *Kimbrough,* 552 U.S. at 91, 128 S.Ct. at 564; *cf. United States v. Warren*, 2008 WL

4925833, *1 (11th Cir. 2008) (recognizing that district courts have "authority to impose a downward variance due to the unwarranted disparity created among defendants convicted of crack-cocaine offenses and powder-cocaine offenses"), such a determination is not mandatory, *see Kimbrough, supra,* at 91, 128 S.Ct. at 564. In other words, "the Supreme Court in *Kimbrough* did not hold that a sentencing court *must* disregard the guideline range." *Myers, supra*, *2 (emphasis in original). In fact, even in *United States v. Gully*, 619 F.Supp.2d 633, 644 (N.D. Iowa 2009), a case cited prominently by petitioner in his amended § 2255 motion, the Court found that "the appropriate method is to calculate the guideline range under existing law (*i.e.,* using the 100:1 ratio and any appropriate guideline adjustments or departures), but then to calculate an alternative guideline range using a 1:1 ratio, and to use or vary from that alternative guideline range depending upon the court's consideration of the 18 U.S.C. § 3553(a) factors to account, for example, for the defendant's history of violence, the presence of firearms, or the defendant's recidivism." Therefore, as *Gully* clearly recognizes, there is nothing which prohibits a court, as this Court did in this case, from calculating the guideline range using the 100:1 ratio and then granting the government's motion for downward departure. More important than the fact that this sentencing procedure is

allowable, petitioner has not pointed to any case in this district in which this Court has deviated from the 100:1 ratio, followed by guideline adjustments or departures, in favor of a different ratio. Accordingly, the undersigned can find neither that petitioner's attorney was deficient in failing to argue for a variance in line with *Kimbrough*[12] or that there is a reasonable probability that the result of his sentencing proceeding would have been different had such a variance been requested.[13]

8.     In consideration of the foregoing, the Magistrate Judge recommends that the Court deny Norwood's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255.

9.     Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must

---

[12]     It is clear from Powell's testimony that she made a strategic decision not to request a *Kimbrough* variance, having no knowledge of a case in this district in which the court applied a different ratio, and instead focused on the government's motion for downward departure because this opened the door for her to argue in favor of a 50% reduction in the low-end sentencing range (292 months) and thereby request a 146-month term of imprisonment for her client.

[13]     Norwood's testimony at his § 2255 evidentiary hearing that he knew this Court was going to impose a 176-month sentence after the government made that recommendation in its motion for downward departure on February 1, 2008, is but further confirmation that the result of his sentencing hearing would not have been different had his attorney requested a variance under *Kimbrough*.

issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1).   A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000), and, in part, on the merits of an underlying constitutional claim, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *id. See also id*. at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a

demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were '"adequate to deserve encouragement to proceed further."'"); *see Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Because, as previously established, appeal waivers are valid, a reasonable jurist could not conclude either that this Court is in error in not addressing the merits of petitioner's substantive *Kimbrough* variance claim or that Norwood should be allowed to proceed further with respect to this claim. *Slack, supra*, 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). In addition, as it relates to petitioner's assertions of ineffective assistance of counsel, reasonable jurists could not debate whether Norwood's § 2255 motion to

vacate should be resolved in a different manner or that the Sixth Amendment issue(s) presented are adequate to deserve encouragement to proceed further.

## **CONCLUSION**

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence should be **DENIED**. Petitioner is not entitled to a certificate of appealability.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 23rd day of December, 2009.

  s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[14] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[14]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).

46